**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OHIO**

| | |
|---|---|
| **The Sherwin-Williams Company,** | **Case No. 1:25CV2100** |
| **Plaintiff,** | |
| **-vs-** | **JUDGE PAMELA A. BARKER** |
| **Power Engineers, Inc. et al.,** | |
| **Defendants.** | **MEMORANDUM OPINION & ORDER** |

Currently pending is Defendant Bobcat Heavy Civil, LLC's (hereinafter "Bobcat") Motion for Judgment on the Pleadings and Alternative Motion to Transfer Venue. (Doc. No. 3.) Plaintiff The Sherwin-Williams Company ("Sherwin-Williams") filed a Brief in Opposition on January 29, 2026, to which Bobcat replied on March 6, 2026. (Doc. Nos. 11, 13.)

For the following reasons, Bobcat's Motion for Judgment on the Pleadings and Alternative Motion to Transfer Venue (Doc. No. 3) is GRANTED IN PART as set forth herein.

## I. Factual Allegations

### A. Sherwin-Williams enters into an Environmental Services Agreement with Defendant Power Engineers, Inc. in 2020

The Complaint sets forth the following factual allegations. (Doc. No. 1-1 at PageID#s 8-21.) Sherwin-Williams is an Ohio corporation with its principal place of business in Cleveland, Ohio. (*Id*. at ¶ 2, PageID# 9.) This matter involves a construction project at a Sherwin-Williams facility on West Miller Road in Garland, Texas (hereinafter "Garland Facility"). (*Id*. at ¶ 1, PageID# 8.)

On March 25, 2020, Defendant Power Engineers, Inc. ("Power") submitted a proposal to Sherwin-Williams to conduct "an evaluation of the stormwater drainage and spill retention

infrastructure" at the Garland Facility (hereinafter "Power March 2020 Proposal"). (*Id*. at ¶ 9, PageID# 10.) A copy of the Power March 2020 Proposal is attached to the Complaint as Exhibit B. (*Id*. at PageID#s 37-46.) Power is an Idaho corporation located in Meridian, Idaho. (*Id.* at ¶ 3, PageID# 9.) *See also* Doc. No. 8 at ¶ 3, PageID# 156.

In the Power March 2020 Proposal, Power proposed "to approach the project using a phased methodology, allowing [it] to develop cost estimates based on information gathered during each stage." (*Id*. at ¶ 10, PageID# 10.) Power proposed the following four (4) different phases of work: (1) Phase 1: Document review, site work, and work planning; (2) Phase 2: Site surveys, subsurface investigation, and assessment reporting; (3) Phase 3: Conceptual engineering analysis and bid document preparation; and (4) Phase 4: Construction oversight. (*Id*.)

Based on Power's proposal, as well as further discussions and negotiations, Sherwin-Williams and Power entered into an Environmental Services Agreement (hereinafter "Power ESA") on August 19, 2020. (*Id*. at ¶ 11, PageID# 10.) A copy of the Power ESA is attached to the Complaint as Exhibit A. (*Id*. at PageID#s 23-35.) The "Scope of Work" outlined in the Power March 2020 Proposal was incorporated by reference into the ESA. (*Id*. at ¶ 11, PageID#s 10, 23.) In addition, the Power ESA contains the following provision regarding venue and jurisdiction:

> The parties agree that any disputes arising under this Agreement shall be litigated in the State of Ohio, and for that purpose both parties agree to submit to the venue and jurisdiction requirements of the state or federal courts having jurisdiction over the county of Cuyahoga in the State of Ohio. The validity, interpretation and performance of this Agreement shall be governed and construed in accordance with the Laws of the State of Ohio. ***

(*Id*. at PageID# 33.)

Between August 19, 2020 and early 2022, Power completed the first three phases outlined in the Power March 2020 Proposal. (*Id*. at ¶ 12, PageID# 10.) Phase 3 consisted of Power preparing a

Request for Proposal ("RFP") and coordinating up to three (3) potential vendors for competitive bidding to complete the actual construction and site work. (*Id*. at ¶ 13, PageID#s 10-11.) At some point during this time period, Power issued an RFP on Sherwin-Williams' behalf for the Garland Facility. (*Id*. at ¶ 15, PageID# 11.) Sherwin-Williams paid Power for its completion of Phases 1-3, as outlined in the ESA and Scope of Work proposal. (*Id*. at ¶ 14, PageID# 11.)

### B. Bobcat submits a proposal to Power and Power submits its own Proposal to Sherwin-Williams for Phase IV of the Garland Facility Project

Bobcat is located in Texas and all of its members reside in Texas. (*Id*. at ¶ 4, PageID# 9.) On March 4, 2022, Bobcat submitted a proposal to Power to complete the project at the Garland Facility (hereinafter "Bobcat March 2022 Proposal"). (*Id*. at ¶ 15, PageID# 11.) A copy of the Bobcat March 2022 Proposal is attached to the Complaint as Exhibit C. (*Id*. at PageID#s 49-56.) "In its proposal, and during negotiations between the parties, Bobcat represented to Power and Sherwin-Williams that it had prior experience constructing stormwater drainage and spill retention infrastructure." (*Id*. at ¶ 17, PageID# 11.) Specifically, in its Proposal, Bobcat represented that it "is a capable partner for electric utility site development and infrastructure construction" and that it "provides construction services with [the] highest level of quality control." (*Id*. at PageID#s 52, 54.) Bobcat further represented that it had "diligently analyzed the project scope of work, plans, specifications, and guidelines to ensure that we have developed a sound plan to construct the project according to lines, grades and specifications provided in the bid and construction documents safely, without harming the public, employees or the environment." (*Id*. at PageID# 52.) The total bid amount in the Bobcat March 2022 Proposal was $1,106,370.50. (*Id*. at PageID# 49.)

Shortly thereafter, on March 16, 2022, Power submitted its own proposal detailing additional work and related fees to Sherwin-Williams outlining how it would complete Phase IV of the Power

ESA (hereinafter "Power March 2022 Proposal"). (*Id*. at ¶ 22, PageID# 12.) A copy of the Power March 2022 Proposal is attached to the Complaint as Exhibit E. (*Id*. at PageID#s 106-109.) Under this Proposal (which Sherwin-Williams alleges is incorporated into the Power ESA), Power agreed to complete several tasks pertaining to "Construction Oversight." (*Id.* at ¶ 23, PageID# 12.) These tasks included the following: (1) Task 1: Site Design Review and City of Garland Site Permit; (2) Task 2: TPDES Construction General Permit; (3) Task 3: Contractor Management Support; (4) Task 4: Construction Oversight; and (5) Task 5: Status Meetings. (*Id.* at ¶ 24, PageID# 12.) *See also id.* at PageID#s 107-108.

As part of Task 3 ("Contractor Management Support"), Power agreed to do the following:

> POWER will provide Management Support to Sherwin-Williams in managing the selected construction contractor. This support will include:
>
> - Review Contractor submittals and shop drawings
> - Respond to Contractor Requests for Information (RFIs)
> - Review Contractor invoices for accuracy and work scope variances
>
> POWER assumes that Sherwin-Williams will contract directly with and pay invoices submitted by the Contractor. POWER's role will be to provide clear direction, communicate and liaison between the Contractor and Sherwin-Williams regarding work scope variances, and facilitate the project progress.

(*Id.* at PageID# 108.) As part of Task 4 ("Construction Oversight"), Power proposed to "provide an engineers' representative and/or environmental specialist daily during construction activities for up to twenty-five (25) weeks (800 hours)." (*Id.*) In addition, Power proposed that "oversight of construction crews and activities will be performed; daily activities will be logged; and review of construction actions in relation to engineering designs will be performed." (*Id.*)

Sherwin-Williams agreed to pay, and did pay, Power a separate fee for the "Contractor Management Support" and "Construction Oversight" tasks outlined in Tasks 3 and 4 of the Power March 2022 Proposal. (*Id*. at ¶¶ 26, 28, PageID# 13.)

### C. Sherwin-Williams and Bobcat enter into a Construction Agreement in October 2022

Power reviewed the Bobcat March 2022 Proposal and submissions, allegedly vetted Bobcat's submissions and abilities, and made an independent recommendation to Sherwin-Williams that Bobcat should be hired to complete the Project. (*Id*. at ¶ 16, PageID# 11.) Based on the Bobcat March 2022 Proposal and Power's recommendation, as well as further discussions and negotiations between the parties, Sherwin-Williams and Bobcat entered into a Construction Agreement (hereinafter "Bobcat Construction Agreement") on October 21, 2022.[1] (*Id*. at ¶ 19, PageID# 12.) A copy of the Bobcat Construction Agreement is attached to the Complaint as Exhibit D. (*Id*. at PageID#s 58-104.)

Of particular relevance, certain documents are defined in the Bobcat Construction Agreement as "Contract Documents." (*Id*. at PageID# 60.) Specifically, Article I of the Bobcat Construction Agreement provides as follows:

> The Contractor [i.e., Bobcat] shall complete the Work described in the Contract Documents for the Project. The Contract Documents consist of
>
> 1. this Agreement signed by Sherwin-Williams and [Bobcat];
>
> 2. the drawings provided by Sherwin-Williams to [Bobcat] from time to time during the course of the Work[;]

[1] Sherwin-Williams further alleges that it reasonably relied on Power's agreement to provide management support and oversight as well as Power's recommendation when it selected Bobcat as the subcontractor and entered into the Construction Agreement with Bobcat. (*Id*. at ¶ 29, PageID# 13.)

3. addenda provided by the Sherwin-Williams or mutually agreed to by Sherwin-Williams and [Bobcat];

4. written orders for changes in the Work, pursuant to Article 10, issued after execution of this Agreement; and

5. other documents, if any, identified as follows:
[Bobcat's] response to Sherwin-Williams' Request for Quote
Power Engineers, drawings, and documents provided in RFP
Sherwin Williams — West Miller Road Drainage Improvements
Issue for Review Drawings
Date: 10/15/2021

(*Id.*) Under the Bobcat Construction Agreement, Bobcat agreed to a substantial completion date of February 1, 2023 for the Garland Facility project. (*Id.* at ¶ 20, PageID# 12.) *See also id.* at PageID# 60. Sherwin-Williams agreed to pay Bobcat the contract sum of $1,234,370.50 for Bobcat's on-site work at the Garland Facility. (*Id.* at ¶ 21, PageID# 12.) *See also id.* at PageID# 61.

Lastly, and of particular importance here, the Bobcat Construction Agreement provides that "[t]he Contract shall be governed by the law of the place where the Project is located, excluding that jurisdiction's choice of law rules." (*Id.* at PageID# 71.) It is undisputed that the Project is located in Texas and, therefore, that the Bobcat Construction Agreement is governed by Texas law. In addition, it undisputed that the Bobcat Construction Agreement does not contain a forum selection clause.

**D. Power and Bobcat allegedly breach their respective contracts with Sherwin-Williams**

Sherwin-Williams alleges that, "[d]espite Bobcat's representations that it was capable of performing the work required, and despite Power's agreement to oversee Bobcat's work, the Project was never properly completed." (*Id.* at ¶ 30, PageID# 13.) According to Sherwin-Williams, "Bobcat deficiently constructed the stormwater drainage and spill retention infrastructure, specifically the large basin located on site at the Garland Facility." (*Id.* at ¶ 31, PageID# 14.) Bobcat's deficient

construction and/or deviations from specifications allegedly include, but are not limited to the following: "a) Bobcat used the wrong substrate material at the north end of the basin (referred to as the 'Forebay'), which absorbed water and swelled; b) Bobcat deviated from the specifications by pouring concrete in the Forebay before the sub-base reached a specific dryness level, which led to movement of the concrete; [and] c) Bobcat failed to properly support road mesh prior to pouring the concrete, severely degrading the functional strength of the finished slab." (*Id.*)

Sherwin-Williams claims that "Power did not adequately oversee or supervise Bobcat's construction, so it did not correct the above problems or other deviations from specifications." (*Id.* at ¶ 32, PageID# 14.) In addition, cracks allegedly formed in the finished slab as it cured. (*Id.* at ¶ 33, PageID# 14.) Bobcat attributed this to groundwater, despite Power's representations that a Geotech survey found no groundwater in the area. (*Id.*) Sherwin-Williams further alleges that "[t]here are multiple leaks in the retention basins at the Garland Facility, which has made it unusable." (*Id.* at ¶ 34, PageID# 14.)

Sherwin-Williams provided notice to Bobcat and Power regarding the allegedly extensive problems with the work performed and, to date, Bobcat and Power have not corrected the work in a satisfactory manner. (*Id.* at ¶ 35, PageID# 14.) "Because the stormwater drainage and spill retention infrastructure are unusable, Sherwin-Williams has no choice but to retain a different contractor to redo the work performed." (*Id.* at ¶ 36, PageID# 14.)

## II. Procedural History

On August 4, 2025, Sherwin-Williams filed a Complaint against Power and Bobcat in the Cuyahoga County Court of Common Pleas. (Doc. No. 1-1 at PageID#s 8-109.) Therein, Sherwin-Williams asserts the following six state law claims: (1) Breach of Contract (as against Power) (Count

One); (2) Breach of Contract (as against Bobcat) (Count Two); (3) Unjust Enrichment (asserted in the alternative against both Power and Bobcat) (Count Three); (4) Professional Negligence (asserted against Bobcat) (Count Four); (5) Professional Negligence (asserted against Power) (Count Five); and (6) Fraudulent Inducement (asserted against Bobcat) (Count Six). (*Id*. at PageID#s 15-20.) Sherwin-Williams seeks compensatory and punitive damages, attorney's fees, costs, expenses, and pre- and post-judgment interest. (*Id*. at PageID# 20.)

Bobcat filed an Answer on October 2, 2025, in which it (among other things) raised the affirmative defenses of lack of personal jurisdiction and improper venue. (Doc. No. 1-2 at PageID# 117.) On that same date, Bobcat removed the case to the Northern District of Ohio on the basis of diversity of citizenship. (Doc. No. 1.) Bobcat represented that Power consented to removal. (*Id*. at PageID#s 2-3.)

Shortly thereafter, on October 17, 2025, Bobcat filed the instant Motion for Judgment on the Pleadings and alternative Motion to Transfer Venue. (Doc. No. 3.) Therein, Bobcat moves, pursuant to Federal Rules of Civil Procedure 12(b)(2) and (h), 28 U.S.C. § 1406, and 28 U.S.C. § 1631, to (1) dismiss all claims asserted against it on the basis of lack of personal jurisdiction; or (2) in the alternative, to either dismiss the claims against Bobcat for *forum non conveniens* or transfer the entire action to the United States District Court for the Northern District of Texas. (*Id*.) Bobcat supports its Motion with the Affidavit of its President, Scott Yocham. (Doc. No. 3-1.)

After receiving two extensions of time, Sherwin-Williams filed a Brief in Opposition on January 29, 2026, in which it (among other things) requests that the Court order limited jurisdictional discovery if it finds that Sherwin-Williams has failed to establish a *prima facie* case of specific

personal jurisdiction over Bobcat. (Doc. No. 11.) Bobcat filed a Reply on March 26, 2026, which it supports with a Supplemental Affidavit of Mr. Yocham. (Doc. Nos. 13, 13-1.)

## III. Standard of Review

Under Rule 12(b)(2) of the Federal Rules of Civil Procedure, "[t]he party seeking to establish the existence of personal jurisdiction bears the burden to establish such jurisdiction.'" *Beydoun v. Wayaniya Rests. Holding, Q.S.C.*, 768 F.3d 499, 504 (6th Cir. 2014) (citing *CompuServe, Inc. v. Patterson*, 89 F.3d 1257, 1261–62 (6th Cir. 2014)). If a court rules on a Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction prior to trial, "it has the discretion to adopt any of the following courses of action: (1) determine the motions based on affidavits alone; (2) permit discovery, which would aid in resolution of the motion; or (3) conduct an evidentiary hearing on the merits of the motion." *Intera Corp. v. Henderson*, 428 F.3d 605, 614, n.7 (6th Cir. 2005) (citing *Serras v. First Tenn. Bank Nat'l Ass'n*, 875 F.2d 1212, 1214 (6th Cir. 1989)). "[T]he decision whether to grant discovery or an evidentiary hearing before ruling on a 12(b)(2) motion is discretionary." *Burnshire Dev., LLC v. Cliffs Reduced Iron Corp.*, 198 Fed. Appx 425, 434 (6th Cir. 2006).

In the instant case, neither party indicates that a hearing is necessary.[2] Having reviewed the parties' briefs and declarations attached thereto, the Court concludes that a hearing will not assist the Court and that Bobcat's Motion may be resolved by the parties' written submissions.

Where, as here, the district court rules on a jurisdictional motion to dismiss made pursuant to Rule 12(b)(2) without conducting an evidentiary hearing, "the court must consider the pleadings and affidavits in a light most favorable to the plaintiff." *CompuServe*, 89 F.3d at 1262 (citing *Theunissen*

---

[2] And, as discussed *infra*, the Court rejects Sherwin-Williams' request for jurisdictional discovery.

*v. Matthews*, 935 F.2d 1454, 1458 (6th Cir. 1991)). To defeat such a motion, a plaintiff need only make a *prima facie* showing of jurisdiction, which can be done merely through the complaint. *See Malone v. Stanley Black & Decker, Inc*., 965 F.3d 499, 504 (6th Cir. 2020) (citing *Am. Greetings Corp. v. Cohn*, 839 F.2d 1164, 1169 (6th Cir. 1988)). The burden then shifts to the defendant, whose motion to dismiss must be properly supported with evidence. *Id.* (citing *Theunissen*, 935 F.2d at 1458). Once the defendant has met the burden, it returns to the plaintiff, who may no longer "stand on his pleadings but must, by affidavit or otherwise, set forth specific facts showing that the court has jurisdiction." *Id.* (quoting *Theunissen*, 935 F.2d at 1458).

When analyzing the parties' submissions, the Court "does not weigh the controverting assertions of the party seeking dismissal." *CompuServe,* 89 F.3d at 1262 (citing *Theunissen*, 935 F.2d at 1459). *See also Carbone v. Kaul*, 140 F.4th 805, 809 (6th Cir. 2025); *Peters Broadcast Engineering, Inc. v. 24 Capital, LLC*, 40 F.4th 432, 438 (6th Cir. 2022). "Dismissal in this procedural posture is proper only if all the specific facts which the plaintiff . . . alleges collectively fail to state a *prima facie* case for jurisdiction." *CompuServe,* 89 F.3d at 1262.

## IV. Analysis

### A. Personal Jurisdiction

In its Motion, Bobcat argues that this Court does not have personal jurisdiction over it because Bobcat does not have the minimum contacts with Ohio necessary to satisfy either the Due Process Clause or Ohio's Long Arm Statute, Ohio Rev. Code § 2307.382. (Doc. No. 3 at PageID#s 131-135.) Bobcat first maintains that this Court does not have personal jurisdiction under the Due Process Clause because (1) Bobcat did not purposefully avail itself of the privilege of acting in Ohio; (2) Sherwin-Williams' claims arise out Bobcat's alleged actions in Texas – not Ohio; and (3) the exercise

of personal jurisdiction over Bobcat would not be reasonable because it does not have substantial connections with this State. (*Id.*) Lastly, Bobcat argues that it is not subject to personal jurisdiction under Ohio Rev. Code § 2307.382(A)(1) because it did not transact business in Ohio. (*Id.*)

In support of its arguments, Bobcat relies heavily on the Affidavit of its President, Scott Yocham. (Doc. No. 3-1.) Therein, Mr. Yocham avers that Bobcat is headquartered in Lorena, Texas and is a regional company, primarily providing services in Texas, Oklahoma and Louisiana. (*Id.*) Mr. Yocham further avers that Bobcat conducts no business in Ohio, has never offered construction services or performed work in Ohio, and has never had any employees, assets, or bank accounts in Ohio. (*Id.*) Specific to the Garland Facility Project, Mr. Yocham avers as follows:

> 8. Bobcat responded to a Request for Proposal, sent by [Power] for the construction of stormwater drainage and spill-retention infrastructure at [Sherwin-Williams'] facility in Garland, Texas. Garland, Texas is sited in Dallas County.
>
> 9. All discussion of the scope of work and negotiation of the Construction Agreement occurred in Texas.
>
> 10. All construction work pursuant to the Construction Agreement took place in Texas.
>
> 11. All communications with Sherwin-Williams during the Project were with employees based in Dallas, Texas, near the facility.
>
> 12. The Construction Agreement contains a provision that it is governed by the laws of the place where the Project is located - Texas.
>
> 13. The Bobcat employees who worked on the Project are primarily based in Texas. None live in Ohio.

(*Id.* at PageID# 142.) Based on the above, Bobcat asserts that exercising personal jurisdiction over it in Ohio would not comport with traditional notions of fair play and substantial justice. (Doc. No.

3.) Bobcat therefore requests that the Court "dismiss Sherwin-Williams' claims against Bobcat, to be refiled in Texas where Bobcat is subject to personal jurisdiction." (*Id*. at PageID# 130.)

In response, Sherwin-Williams argues that its Complaint adequately establishes personal jurisdiction. (Doc. No. 11 at PageID#s 178-180.) Specifically, Sherwin-Williams maintains that Bobcat "ignores important context surrounding its relationship with Power and Sherwin-Williams for the Project." (*Id*.) Sherwin-Williams asserts that "[t]he Complaint alleges — and evidence shows —that there was a forum selection clause requiring all disputes arising under the Power Contract to be litigated in Ohio ... , and the Bobcat Contract explicitly incorporates prior communications and RFP documents from Power." (*Id.* at PageID# 179.) Thus, Sherwin-Williams argues, "Bobcat understood exactly who it was doing business with, and it knew or should have known that all disputes related to the Project should be litigated in Ohio." (*Id*.)

In addition, Sherwin-Williams emphasizes the Seventh Affirmative Defense in Bobcat's Answer, which provides that "[a]ny damages caused may have been solely the result of acts or omissions or conduct of other persons whom Defendant has no control over." (Doc. No. 1-2 at PageID# 116.) Sherwin-Williams maintains that this defense shows that "Bobcat intends to rely on Power's duties and contractual obligations to show that Power, and not Bobcat, was responsible for the incurred damages." (Doc. No. 11 at PageID# 180.) According to Sherwin-Williams, "[t]hese duties, obligations, and conduct by Power are exactly the sort of conduct that is indisputably subject to the Ohio forum selection clause within the Power Contract." (*Id*.)

Based on the above, Sherwin-Williams asserts that the Court should deny Bobcat's Motion as a matter of law because the Complaint adequately establishes personal jurisdiction over Bobcat. (*Id*.) Alternatively, if the Court does not agree that personal jurisdiction is established by the allegations

in the Complaint, Sherwin-Williams requests "limited jurisdictional discovery to further prove that this lawsuit should proceed in Ohio." (*Id*. at PageID# 175.)

"In a diversity case, a federal court can exercise personal jurisdiction over a defendant if jurisdiction is (1) authorized by the law of the state in which it sits, and (2) in accordance with the Due Process Clause of the Fourteenth Amendment." *Tharo Systems, Inc. v. Cab Producktechnik GMBH & Co., KG*, 196 Fed. Appx 366 (6th Cir. 2006). Jurisdiction under Ohio's long-arm statute is governed by Ohio Rev. Code § 2307.382 and the due process inquiry requires determining "whether the facts of the case demonstrate that the non-resident defendant possesses such minimum contacts with the forum state that the exercise of jurisdiction would comport with 'traditional notions of fair play and substantial justice.'" *Theunissen*, 935 F.2d at 1459 (quoting *Int'l Shoe Co. v. State of Wash*., 326 U.S. 310, 316 (1945)).

As the Sixth Circuit has explained, "[p]ersonal jurisdiction comes in two flavors: [1] 'general' jurisdiction, which depends on a showing that the defendant has continuous and systematic contacts with the forum state sufficient to justify the state's exercise of judicial power with respect to any and all claims the plaintiff may have against the defendant, and [2] 'specific' jurisdiction, which exposes the defendant to suit in the forum state only on claims that 'arise out of or relate to' a defendant's contacts with the forum." *Kerry Steel, Inc. v. Paragon Industries, Inc.,* 106 F.3d 147, 149 (6th Cir. 1997). *See also Malone*, 965 F.3d at 501 (citing *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)); *Carbone*, 140 F.4th at 810.

Here, Bobcat asserts that "only specific jurisdiction ... is relevant." (Doc. No. 3 at PageID# 131.) Sherwin-Williams does not dispute that general jurisdiction is not at issue in this matter and limits its arguments to specific personal jurisdiction. (Doc. No. 11.) Thus, and in the absence of any

opposition, the Court will limit its analysis to the question of whether Sherwin-Williams has made a *prima facie* showing of specific personal jurisdiction over Bobcat.

### 1. Due Process

In determining whether specific personal jurisdiction exists, "the crucial federal constitutional inquiry is whether, given the facts of the case, the nonresident defendant has sufficient contacts with the forum state that the district court's exercise of jurisdiction would comport with 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co.*, 326 U.S. at 316 (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)). *See also Carbone*, 140 F.4th at 809- 810; *Blessing v. Chandrasekhar*, 988 F.3d 889, 904 (6th Cir. 2021); *CompuServe, Inc.*, 89 F.3d at 1263; *Theunissen*, 935 F.2d at 1459. The Sixth Circuit has established the following three-part test for determining whether specific personal jurisdiction exists:

> First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum to make the exercise of jurisdiction over the defendant reasonable.

*CompuServe, Inc.*, 89 F.3d at 1263. *See also Carbone*, 140 F.4th at 810; *Beydoun*, 768 F.3d at 505; *Calphalon v. Rowlette*, 228 F.3d 718, 721 (6th Cir. 2000); *Southern Mach. Co. v. Mohasco Indus.*, 401 F.2d 374, 381 (6th Cir. 1968).

#### a. Purposeful Availment

The question of whether a defendant has purposefully availed itself of the privilege of doing business in the forum state is "the *sine qua non* for *in personam* jurisdiction." *Mohasco Indus.*, 401 F.2d at 381–82. *See also Carbone,* 140 F.4th at 811 ("We have described the purposeful-availment component as 'the constitutional touchstone of personal jurisdiction.'") (quoting *AlixPartners, LLP*

*v. Brewington*, 836 F.3d 543, 550 (6th Cir. 2016)). The "purposeful availment" requirement is satisfied when the defendant's contacts with the forum state "proximately result from actions by the defendant *himself* that create a 'substantial connection' with the forum State," and when the defendant's conduct and connection with the forum are such that he "should reasonably anticipate being haled into court there." *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 474–75 (1985) (quoting *World–Wide Volkswagen v. Woodson,* 444 U.S. 286, 297 (1980)). *See also Beydoun*, 768 F.3d at 505-506; *Reynolds v. International Amateur Athletic Fed'n*, 23 F.3d 1110, 1116 (6th Cir. 1994).

Courts require purposeful availment to insure that "random," "fortuitous," or "attenuated" contacts do not cause a defendant to be haled into a jurisdiction. *Burger King Corp*., 471 U.S. at 475. In this regard, the Supreme Court has explained that, in examining a defendant's contacts, courts "look[] to the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there." *Walden v. Fiore*, 571 U.S. 277, 285 (2014). In other words, "[d]ue process requires that a defendant be haled into court in a forum State based on his own affiliation with the State, not based on the 'random, fortuitous, or attenuated' contacts he makes by interacting with persons affiliated with the State." *Id*. at 286. "Simply put, '[t]he contacts must be the defendant's own choice.'" *Carbone*, 140 F.4th at 810 (quoting *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct*., 592 U.S. 351, 359 (2021)).

Here, Bobcat argues that Sherwin-Williams has failed to allege sufficient facts to establish purposeful availment and that, in any event, Mr. Yocham's Affidavit establishes that exercising specific personal jurisdiction over Bobcat in Ohio would not comport with Due Process. (Doc. No. 3 at PageID#s 132-133.) Bobcat asserts that, in the Complaint, Sherwin-Williams alleges that Bobcat responded to a request for proposal from Power (an Idaho corporation) for the Garland Facility

Project located in Texas. (*Id.*) Thus, Bobcat maintains that it "did not purposefully seek out an Ohio company to contract with." (*Id.*) Bobcat next asserts that "the conduct of the parties demonstrates that Bobcat did not create a substantial connection with Ohio." (*Id.*) Relying on Mr. Yocham's Affidavit (Doc. No. 3-1), Bobcat argues that (1) its contract negotiations occurred in Texas with Sherwin-Williams employees based in Dallas; (2) throughout the Project, Bobcat communicated with Texas-based Sherwin-Williams employees; and (3) the Bobcat Construction Agreement is governed by Texas law. (*Id.*) In sum, Bobcat maintains that Sherwin-Williams has not satisfied its *prima facie* burden of demonstrating purposeful availment because "even though Bobcat contracted with an Ohio company, everything about that contract -- including the negotiations, communications, and work – happened in Texas." (*Id.*)

In its Brief in Opposition, Sherwin-Williams does not separately discuss or address whether Bobcat purposefully availed itself of the privilege of acting in Ohio for purposes of the Due Process Clause. (Doc. No. 11 at PageID#s 178-180.) Rather, Sherwin-Williams argues generally that "[t]here was a forum selection clause requiring all disputes arising under the Power Contract to be litigated in Ohio ... , and the Bobcat Contract explicitly incorporates prior communications and RFP documents from Power." (*Id.* at PageID# 179.) Thus, Sherwin-Williams maintains that Bobcat "knew or should have known that all disputes related to the Project should be litigated in Ohio." (*Id.*) In addition, as noted above, Sherwin-Williams argues that Bobcat's Seventh Affirmative Defense provides a basis for personal jurisdiction, asserting that "[i]f Bobcat intends to rely on Power's conduct in defending this lawsuit, then it cannot escape the Power [ESA]." (*Id.* at PageID# 180.)

In its Reply, Bobcat argues that the terms of Sherwin-Williams' contract with Power cannot be imputed to Bobcat. (Doc. No. 13 at PageID# 252-254.) Bobcat maintains that, while the Bobcat

Construction Agreement defines the term "Contract Documents" to include "documents provided [by Power] in the RFP," Bobcat was not, in fact, provided with the Power ESA as part of Power's RFP. (*Id.*) Bobcat supports this statement with a Supplemental Affidavit of Mr. Yocham. (Doc. No. 13-1.) Therein, Mr. Yocham avers (in relevant part) as follows:

> 4. As I previously attested, Bobcat responded to a Request for Proposal ("RFP"), sent by [Power] for the construction of stormwater drainage and spill-retention infrastructure at [Sherwin-Williams'] facility in Garland, Texas.
>
> 5. The RFP contained several documents, including: a bid manual, a meeting agenda, meeting minutes, cost codes, copies of permits, an assessment report, surveys, drainage plans, maps, CCTV footage, and other technical documents. A true and accurate copy of all documents that Bobcat received in the RFP, except for sixteen CCTV footage files and two CADD files that require specific technical software to open, are attached hereto as Exhibit 1.
>
> 6. **The contract between Sherwin-Williams and Power Engineers was not included in the RFP documents**, and there is no reason why it would be. Additionally Bobcat had no expectation that the contract would be included in the RFP documents, or otherwise provided. (See Ex. 1).
>
> 7. **The first time Bobcat ever saw the contract between Sherwin-Williams and Power Engineers was as an exhibit attached to Sherwin-Williams' complaint in this lawsuit**.

(*Id*. at PageID#s 259-260) (emphasis added). Bobcat next asserts that, even if Power had provided the Power ESA to Bobcat as part of the RFP, "the express terms of Bobcat's contract would not bind it to Power's contract." (Doc. No. 13 at PageID# 254.) Lastly, Bobcat argues that Sherwin-Williams has cited no authority that Bobcat's Seventh Affirmative Defense is sufficient to demonstrate purposeful availment. (*Id*. at PageID# 255.)

For the following reasons, the Court finds that Sherwin-Williams has failed to satisfy its *prima facie* burden of demonstrating that Bobcat purposefully availed itself of the privilege of acting in Ohio. Sherwin-Williams does not direct this Court's attention to any specific allegations in the

Complaint that it believes demonstrates that Bobcat created a substantial connection with Ohio such that it should reasonably anticipate being haled into Court here. Indeed, to the contrary, the Complaint alleges that (1) Bobcat is a Texas limited liability company located in Texas; (2) all of Bobcat's members reside in Texas; (3) Sherwin-Williams' Garland Facility is located in Texas; (4) Bobcat submitted a proposal to Power (an Idaho corporation) to perform certain construction services at the Garland Facility in Texas; and (5) Bobcat's alleged breaches of contract and professional negligence occurred as a result of its allegedly deficient performance of construction services at the Garland Facility in Texas. (Doc. No. 1-1 at ¶¶ 1, 3, 4, 15, 31, 45-48, 60.) True, the Complaint also alleges that Sherwin-Williams is an Ohio corporation and that Bobcat entered into a Construction Agreement with Sherwin-Williams. (*Id*. at ¶¶ 2, 19.) However, it is well established that "the mere existence of a contract" with an Ohio citizen is insufficient to confer personal jurisdiction. *See Calphalon*, 228 F.3d at 722. [3]

Sherwin-Williams nonetheless asserts that its Complaint "adequately establishes personal jurisdiction" because (1) the Power ESA contains an Ohio forum selection clause; and (2) "the Bobcat Contract explicitly incorporates prior communications and RFP documents from Power." (Doc. No. 11 at PageID# 180.) The Court finds this argument to be without merit. As noted *supra,* Article I of the Bobcat Construction Agreement defines the "Contract Documents" as including "Power Engineers, [sic] drawings, and documents provided in RFP." (Doc. No. 1-1 at PageID# 60.)

---

[3] Although not cited by Sherwin-Williams, the Court notes that, in Paragraph 7 of the Complaint, Sherwin-Williams alleges generally that "[t]his Court has personal jurisdiction over Defendants because they transact(ed) business in Ohio and/or caused tortious injury in Ohio, pursuant to Ohio Revised Code Section 2307.382(A)(1, 3-4)." (Doc. No. 1-1 at ¶ 7, PageID# 9.) The Court finds this allegation insufficient to satisfy Sherwin-Williams' burden of demonstrating personal jurisdiction over Bobcat under the Due Process Clause. Paragraph 7 is broad and conclusory and not supported by any specific factual allegations suggesting that Bobcat had minimum contacts with the State of Ohio relating to the instant dispute.

However, Sherwin-Williams does not allege in the Complaint that the "Power Engineers [] drawings, and documents provided in [the] RFP" to Bobcat included the Power ESA. Nor does Sherwin-Williams direct this Court's attention to any allegations in the Complaint otherwise suggesting that the Bobcat Construction Agreement incorporated the Power ESA and/or that Bobcat was aware that Power and Sherwin-Williams had agreed that any disputes arising under the Power ESA were required to be litigated in Ohio.

Moreover, even if the allegations in Sherwin-Williams' Complaint were sufficient to establish purposeful availment (which they are not), Bobcat responded with evidence (in the form of Mr. Yocham's Supplemental Affidavit) that the "documents provided in [the Power] RFP" did not include the Power ESA and, further, that "the first time Bobcat ever saw the contract between Sherwin-Williams and Power Engineers was as an exhibit attached to Sherwin-Williams' complaint in this lawsuit." (Doc. No. 13-1 at PageID# 260.) Moreover, Bobcat also came forward with evidence (in the form of Mr. Yocham's First Affidavit) that: (1) Bobcat conducts no business in Ohio and has never offered construction services or performed work in Ohio; (2) Bobcat has never had any employees, assets, or bank accounts in Ohio; (3) Bobcat responded to an RFP for the Garland Facility Project that was sent by Power (not Sherwin-Williams); (5) "all discussion of the scope of work and negotiation of the Construction Agreement occurred in Texas;" (6) "all construction work pursuant to the Construction Agreement took place in Texas;" (7) "all communications with Sherwin-Williams during the Project were with employees based in Dallas, Texas;" (8) the Bobcat Construction Agreement contains a provision that it is governed by the laws of the place where the Project is located; i.e., Texas; and (9) "the Bobcat employees who worked on the Project are primarily based in Texas." (Doc. No. 3-1.)

In light of the above, the Court finds that, even assuming Sherwin-Williams had satisfied its *prima facie* burden of establishing purposeful availment through the allegations in (and attachments to) its Complaint, Bobcat then met its burden of demonstrating that it did not purposefully avail itself of the privilege of acting in Ohio via the Affidavits of Mr. Yocham. *See Malone, Inc*., 965 F.3d at 504; *Theunissen*, 935 F.2d at 1458. As noted *supra*, once a defendant has met its burden, the burden returns to the plaintiff, who may no longer "stand on his pleadings but must, by affidavit or otherwise, set forth specific facts showing that the court has jurisdiction." *Malone,* 965 F.3d at 504 (quoting *Theunissen*, 935 F.2d at 1458). Here, Sherwin-Williams did not respond by coming forward with specific facts (by affidavit or otherwise) showing that this Court has specific personal jurisdiction over Bobcat.

Lastly, the Court rejects Sherwin-Williams' argument that Bobcat's Seventh Affirmative Defense demonstrates that Bobcat purposefully availed itself of the privilege of acting in Ohio. As Bobcat correctly notes, Sherwin-Williams has not cited any authority for the proposition that a defendant purposefully avails itself of the privilege of acting in a forum State solely because a different defendant has a contract with the plaintiff that includes a forum selection clause. Moreover, to the extent Sherwin-Williams is arguing that Bobcat's assertion of its Seventh Affirmative Defense constitutes a waiver of personal jurisdiction, the Court rejects this argument. Bobcat asserted lack of personal jurisdiction as an affirmative defense in its Answer (Doc. No. 1-2 at PageID# 117) and then promptly and explicitly moved for dismissal on this basis in its Motion for Judgment on the Pleadings (Doc. No. 3). Sherwin-Williams cites no authority, whatsoever, indicating that Bobcat waived the issue of personal jurisdiction by raising its Seventh Affirmative Defense in its Answer.

Accordingly, and for all the above reasons, the Court finds that Sherwin-Williams has failed to satisfy its *prima facie* burden of demonstrating that Bobcat purposefully availed itself of the privilege of acting in Ohio.

**b. Arise From**

The second factor in evaluating specific jurisdiction requires that a cause of action "arise from" the defendant's activities in the forum state. *Mohasco Indus., Inc*., 401 F.2d at 381. *See also Ford Motor Company*, 592 U.S. at 362. The Constitution requires "an affiliation between the forum and the underlying controversy." *Ford Motor Co*., 592 U.S. at 359 (quoting *Bristol-Myers Squibb Co. v. Superior Court of California, San Francisco County*, 582 U.S. 255, 262 (2017)) *See also Sullivan v. LG Chem, Ltd.*, 79 F.4th 651, 671-672 (6th Cir. 2023). "This requires that [defendant]'s contacts be 'related to the operative facts of the controversy.'" *MAG IAS Holdings, Inc. v. Schmuckle*, 854 F.3d 894, 903 (6th Cir. 2017) (quoting *Bird v. Parsons*, 289 F.3d 865, 875 (6th Cir. 2002)). "'[S]pecific jurisdiction is confined to adjudication of issues deriving from, or connected with, the very controversy that establishes jurisdiction.'" *Sullivan,* 79 F.4th at 672 (quoting *Bristol-Myers*, 582 U.S. at 262). Stated differently, "'[o]nly when the operative facts of the controversy are not related to the defendant's contact with the state can it be said that the cause of action does not arise from that contract.'" *Calphalon,* 228 F.3d at 723–24 (quoting *Mohasco Indus., Inc*., 401 F.2d at 384, fn.29). "[T]his is a 'lenient standard,' requiring only that the cause of action have a 'substantial connection' to the defendant's activity in the state." *MAG IAS*, 854 F.3d at 903 (quoting *Bird,* 289 F.3d at 875).

Here, Bobcat argues that Sherwin-Williams has failed to satisfy its *prima facie* burden of demonstrating that its claims against Bobcat "arise from" Bobcat's activities in Ohio. (Doc. No. 3.) Bobcat maintains that "on a plain reading of the Complaint, none of the factual allegations against

Bobcat took place in Ohio." (*Id.* at PageID#133.) Relying on Mr. Yocham's First Affidavit, Bobcat reiterates that Bobcat does not conduct business in Ohio, has never offered any services or performed work in Ohio, and has never had any employees, assets, or bank accounts in Ohio. (*Id.*) In response, Sherwin-Williams fails to acknowledge or address the "arise from" element of the *Mohasco* test for establishing specific personal jurisdiction. (Doc. No. 11.)

For the following reasons, the Court finds that Sherwin-Williams has failed to satisfy its *prima facie* burden of demonstrating that its claims against Bobcat "arise from" Bobcat's activities in Ohio. Sherwin-Williams asserts claims against Bobcat for breach of the Bobcat Construction Agreement (Count Two), unjust enrichment (Count Three), professional negligence (Count Four), and fraudulent inducement (Count Six). (Doc. No. 1-1 at PageID#s 15-20.) Sherwin-Williams does not direct this Court's attention to any allegations (or evidence) that any of the facts underlying these claims occurred or "arose from" Bobcat's activities in Ohio. To the contrary, in the Complaint, Sherwin-Williams alleges that (1) Bobcat is located in Texas; (2) all of Bobcat's members reside in Texas; (3) Sherwin-Williams' Garland Facility is located in Texas; (4) the Bobcat Construction Agreement related to a project at the Garland Facility in Texas; and (5) Bobcat's alleged breaches of the Bobcat Construction Agreement and professional negligence occurred as part of Bobcat's activities at the Garland Facility in Texas. (Doc. No. 1-1 at ¶¶ 1, 4, 31-33, 45-48; PageID#s 8, 9, 14, 15-16.)

Thus, all of the allegations in the Complaint relating to the factual basis of Sherwin-Williams' breach of contract, unjust enrichment, and professional negligence claims refer only to Bobcat's conduct and activities in Texas – not Ohio. *See, e.g., Spyglass Group LLC v. Genesis Health Management, Inc.*, 2022 WL 17251820 at * 6 (N.D. Ohio Nov. 28, 2022) (noting that, to satisfy the "arising from" test, "the actual breach of the contract must have occurred in the State where the

plaintiff brings suit") (citing *Calphalon*, 228 F.3d at 724 and *Kerry Steel*, 106 F.3d at 152). And, regarding Sherwin-Williams' fraudulent inducement claim, Sherwin-Williams has not directed this Court's attention to any allegations (or evidence) that Bobcat directed any alleged fraudulent misrepresentations to Sherwin-Williams' representatives in Ohio.

Thus, the Court finds that Sherwin-Williams has failed to satisfy its *prima facie* burden of demonstrating this element of the *Mohasco* test. And assuming *arguendo* that Sherwin-Williams had plead sufficient allegations in the Complaint to satisfy this element, Bobcat sufficiently responded by coming forward with evidence that (1) Bobcat did not reach out to Sherwin-Williams in Ohio to enter into a construction agreement relating to the Garland Facility; (2) all discussion of the scope of work and negotiation of the Construction Agreement occurred in Texas; (3) all construction work pursuant to the Construction Agreement took place in Texas; (4) all communications with Sherwin-Williams during the project were with employees based in Dallas, Texas; and (5) none of the Bobcat employees who worked on the project live in Ohio. (Doc. No. 3-1 at PageID# 142.) Although it could have done so, Sherwin-Williams did not respond with any opposing or countervailing evidence.

Accordingly, and for all the reasons set forth above, the Court finds that Sherwin-Williams has failed to demonstrate that its claims against Bobcat "arose from" Bobcat's activities in Ohio.

**c. Reasonableness**

The third, and final, factor requires that "the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable." *Mohasco Indus., Inc.*, 401 F.2d at 381. "[W]hen considering whether it is reasonable to exercise personal jurisdiction over a non-resident defendant, a court must consider several factors including the following: (1) the burden on the defendant, (2) the

interest of the forum state, (3) the plaintiff's interest in obtaining relief, and (4) other states' interest in securing the most efficient resolution of the controversy." *Intera Corp*., 428 F.3d at 618. *See also Sullivan*, 79 F.4th at 674; *Air Prods. & Controls, Inc*. v. *Safetech Intern., Inc*., 503 F.3d 544, 554-555 (6th Cir. 2007).

Here, Bobcat argues that Sherwin-Williams has failed to demonstrate that the exercise of specific personal jurisdiction over it would be reasonable. (Doc. No. 3 at PageID# 134.) Bobcat maintains that "[d]efending a lawsuit in Ohio would be highly burdensome to Bobcat" because "[t]he majority of the evidence and witnesses are in Texas, not Ohio." (*Id.*) Bobcat further asserts that "[a]lthough Ohio may have some interest in resolving a dispute involving an Ohio company, the actual conduct at issue in this case occurred in Texas and the Construction Agreement between Bobcat and Sherwin-Williams is governed by Texas law." (*Id.*) Indeed, Bobcat maintains that "Texas clearly has a stronger interest than Ohio, because the Project is located in Texas and the outcome could have an impact on Texas residents." (*Id.*) In response, Sherwin-Williams fails to acknowledge or address the reasonableness element of the *Mohasco* test for establishing specific personal jurisdiction. (Doc. No. 11.)

The Court agrees with Bobcat that the exercise of specific personal jurisdiction over it would not be reasonable. As discussed at length above, Sherwin-Williams has not directed this Court's attention to any allegations (or evidence) that Bobcat's actions had a "substantial enough connection with the forum state to make the exercise of jurisdiction over [it] reasonable." *Mohasco Indus., Inc*., 401 F.2d at 381. Moreover, Sherwin-Williams does not oppose or otherwise address Bobcat's arguments that it would burdensome for it to defend this suit in Ohio and/or that Texas has a greater interest in this lawsuit given that both the Garland Facility project and Bobcat's alleged breaches

occurred in Texas. Accordingly, the Court finds that Sherwin-Williams has failed to demonstrate that Bobcat's actions have a substantial enough connection with Ohio to make the exercise of specific personal jurisdiction over Bobcat reasonable.

Thus, and for all the reasons set forth above, the Court concludes that Sherwin-Williams has failed to establish specific personal jurisdiction in this forum under the Due Process Clause. And because the Court finds that jurisdiction is not proper under the Due Process clause, it is not necessary to analyze whether jurisdiction exists under Ohio's Long Arm Statute.[4] *See Conn v. Zakharov*, 667 F.3d 705, 711 (6th Cir. 2012) ("Of course, if jurisdiction is not proper under the Due Process Clause it is unnecessary to analyze jurisdiction under the state long-arm statute, and vice-versa."); *McManamon v. Lerner*, 2024 WL 3925944 at * 3 and fn 4 (N.D. Ohio Aug, 22, 2024).

**2. Jurisdictional Discovery**

Lastly, Sherwin-Williams argues that "if the Court determines that more evidence is necessary to establish personal jurisdiction, then it should permit limited jurisdictional discovery." (Doc. No. 11 at PageID#s 181-183.) "[A] district court faced with a motion to dismiss for lack of personal jurisdiction over the defendant may permit the plaintiff further discovery to investigate jurisdictional

---

[4] The Ohio General Assembly amended Ohio's long-arm statute in April 2021 to extend the reach of Ohio's long-arm statute to the limits of the U.S. Constitution. Before the amendment, "Ohio's long-arm statute consisted of a list of enumerated acts set forth in § 2307.382(A), followed by an admonition in § 2307.382(C) that '[w]hen jurisdiction over a person is based solely upon this section, only a cause of action arising from acts enumerated in this section may be asserted against him.'" *AmaTech Grp. Ltd. v. Fed. Card Servs., LLC,* 2022 WL 44674 at *4 (S.D. Ohio Jan. 5, 2022) (quoting Ohio Rev. Code § 2307.382). Based on that language, "courts routinely noted that Ohio's long-arm statute did not extend jurisdiction to the fullest extent that the Due Process Clause allows." *Id*. The amendment, however, revised subsection (C) to read: "In addition to a court's exercise of personal jurisdiction under subsection (A) of this section, a court may exercise personal jurisdiction over a person on any basis consistent with the Ohio Constitution and the United States Constitution." Ohio Rev. Code § 2307.382(C). Ohio courts have yet to rule on the effect of this new language, and federal courts have disagreed over its interpretation. *See Chagrinovations LLC v. Lean In, LLC*, 2026 WL 2119275 at * 18 (N.D. Ohio July 23, 2026) (collecting cases); *A.B. Pratt & Co. v. Bridgeport Grp., LLC*, 2023 WL 2865640 at *7 (N.D. Ohio Apr. 10, 2023) (collecting cases). As the Court concludes that personal jurisdiction would not be consistent with the Due Process Clause, it need not reach this issue.

facts." *Theunissen,* 935 F.2d at 1456. A plaintiff, however, is not entitled to jurisdictional discovery. *See Angel's Dream LLC v. Toledo Jet Center, LLC*, 684 F.Supp.3d 663, 670-671 (N.D. Ohio 2023); *Nottingham Spirk Design Assocs. Inc. v. Halo Innovations, Inc*. 603 F.Supp.3d 561, 571-572 (N.D. Ohio 2022). Rather, "the plaintiff must, at a minimum, 'give the district court a reasonable basis to expect that discovery would reveal evidence that supports the claimed jurisdiction.'" *Nottingham Spirk Design Assocs. Inc*.. 603 F.Supp.3d at 571-572 (quoting *C.H. By and Through Shields v. United States*, 818 Fed. Appx 481, 484 (6th Cir. 2020)). *See also Angel's Dream LLC*, 684 F.Supp.3d at 670-671; *E.K. v. Cooper Companies, Inc*., 2025 WL 3443278 at * 6 (S.D. Ohio Dec. 1, 2025). "[I]t is well within the Court's discretion to deny a plaintiff's request for jurisdictional discovery where ... the plaintiff makes only speculative allegations." *Miller Indus. Towing Equipment Inc. v. NRC Industries, Inc.,* 2020 WL 1897171 at *6 (E.D. Tenn. April 16, 2020); *Reyes v. Freedom Smokes, Inc*., 2020 WL 1677480 at * 6 (N.D. Ohio April 6 2020).

Here, Sherwin-Williams argues that jurisdictional discovery is necessary to determine (1) whether the Power ESA was incorporated into the Bobcat Construction Agreement; and (2) to what extent Bobcat was otherwise aware of the Ohio forum selection clause in the Power ESA. (Doc. No. 11 at Page ID#s 181-183.) Sherwin-Williams explains as follows:

> Th[e] Power Contract was entered into before the Bobcat Contract, and the Bobcat Contract was entered into pursuant to/because of this Power Contract. The only reason Power initiated a Request for Proposal to Bobcat was because the Power Contract required Power to obtain a contractor for work on the Project. **The Bobcat Contract explicitly incorporates "documents provided in [the Power] RFP." (Ex. 2.) It is anticipated that these "documents provided" will include the original Power Contract, which includes the Ohio forum selection clause. If the Power Contract was incorporated into the Bobcat Contract, then Bobcat would indisputably be subject to personal jurisdiction in Ohio**. The Bobcat Contract does not include a forum selection clause, so it makes sense that the Power Contract, including its forum selection provisions, were incorporated to apply to Bobcat's conduct on the Project too.

(*Id*. at Page ID# 182) (emphasis added). Sherwin-Williams asserts that "[i[f jurisdictional discovery is permitted, [it] would request all documents provided by Power to Bobcat during the RFP process and notice one or two depositions to gain further clarity on dealings between Power and Bobcat before Bobcat entered into a contract with Sherwin-Williams." (*Id*.) Lastly, Sherwin-Williams indicates that it "will also request all communications between Power and Bobcat to assess what other information was provided to Bobcat about the Project, including whether Power communicated with Bobcat about its own contract with Sherwin-Williams and the forum selection clause." (*Id*.) Sherwin-Williams argues that "[i]f Bobcat knew that it's tortious conduct—particularly its negligent and/or fraudulent representations during the RFP process—would cause injury to Sherwin-Williams in Ohio, then it would be subject to personal jurisdiction under section (A)(3) of Ohio's long-arm statute." (*Id*. at PageID#s 182-183)

In response, Bobcat argues that jurisdictional discovery is unnecessary because Bobcat was not provided with the Power ESA as part of the RFP issued by Power. (Doc. No. 13 at PageID# 256.) Bobcat supports this statement with Mr. Yocham's Supplemental Affidavit. (Doc. No. 13-1.) As noted *supra*, therein, Mr. Yocham avers (in relevant part) that "[t]he contract between Sherwin-Williams and Power Engineers was not included in the RFP documents" and "[t]he first time Bobcat ever saw the contract between Sherwin-Williams and Power Engineers was as an exhibit attached to Sherwin-Williams' complaint in this lawsuit." (*Id*. at PageID#s 259-260) (emphasis added). In light of the above, Bobcat argues that "any further discovery is not necessary, as it would not reveal any additional information that would establish jurisdiction." (Doc. No. 13 at PageID# 256.)

Although it could have sought leave to do so, Sherwin-Williams did not file a sur-reply or other response to address the need for jurisdictional discovery in light of Mr. Yocham's Supplemental Affidavit.

For the following reasons, the Court rejects Sherwin-Williams' request for jurisdictional discovery. The only basis for Sherwin-Williams' belief that the Power ESA was expressly incorporated into the Bobcat Construction Agreement is Article I of that Agreement, which provides that the "Contract Documents" include (as relevant here) "Power Engineers[‘] drawings, and documents provided in RFP." (Doc. No. 1-1 at PageID# 60.) Sherwin-Williams "anticipates" that discovery will show that the reference to "documents provided in RFP" includes the Power ESA. However, as discussed *supra*, Mr. Yocham attaches a "true and accurate copy of all documents that Bobcat received in the RFP" to his Supplemental Affidavit and expressly avers that the Power ESA was not included among the RFP documents. (Doc. No. 13-1 at PageID#s 259-260.) And the Court's own review of the documents attached to Mr. Yocham's Supplemental Affidavit confirms that the Power ESA is not included among them. Thus, the Court is not persuaded that jurisdictional discovery will reveal that the forum selection clause in the Power ESA was incorporated into, and became a part of, the Bobcat Construction Agreement.

Sherwin-Williams also suggests that jurisdictional discovery might reveal the extent to which Bobcat was otherwise "aware of" the forum selection clause in the Power ESA. (Doc. No. 11 at PageID# 175, 182-183.) This argument is without merit. Mr. Yocham avers that "the first time Bobcat ever saw the contract between Sherwin-Williams and Power Engineers was as an exhibit attached to Sherwin-Williams' complaint in this lawsuit." (Doc. No. 13-1 at PageID# 260.) Sherwin-Williams nonetheless appears to suggest that there is a possibility that someone at Bobcat might have

had a conversation with someone at Power during which Power advised Bobcat that the Power ESA included an Ohio forum selection clause. However, even assuming this to be the case, the Court finds that Sherwin-Williams has failed to demonstrate how it would establish the existence of personal jurisdiction over Bobcat under the Due Process Clause. As noted above, Sherwin-Williams has not cited any authority for the proposition that a defendant may be subject to personal jurisdiction in a forum state solely because a different defendant has a contract with the plaintiff that includes a forum selection clause. And the Court is unwilling to permit jurisdictional discovery on that theory where (as here, and as discussed in greater detail above), Sherwin-Williams has failed to allege *any* facts suggesting that Bobcat purposefully availed itself of the privilege of acting in Ohio and/or that any of Sherwin-Williams' claims against Bobcat arise from Bobcat's activities in Ohio.

Accordingly, and for all the reasons set forth above, the Court denies Sherwin-Williams' request for jurisdictional discovery.

**B. Dismiss or Transfer**

The Court must next determine whether it should (1) dismiss the claims against Bobcat; (2) sever the claims against Bobcat and transfer them to the Northern District of Texas; or (3) transfer the entire case (including the claims against Power) to the Northern District of Texas. *See Cosmichrome, Inc. v. Spectra Chrome, LLC*, 504 Fed. Appx 468, 472 (6th Cir. 2012) (finding that, if a court lacks personal jurisdiction, it may dismiss a case without prejudice or, in the interest of justice, transfer it to a court that has personal jurisdiction over the defendant(s) pursuant to 28 U.S.C. §§ 1406(a) or 1631); *Aqeel v. Liberty Ins. Co.*, 2026 WL 124240 at * 6 (M.D. Tenn. Jan. 16, 2026) (noting that, "when a court lacks personal jurisdiction as to only one or more but fewer than all of the defendants, in an action, the court has three options on a motion under Section 1406(a): ... a court

may '(1) dismiss this action pursuant to 28 U.S.C. § 1406(a), (2) transfer the entire case to another district where venue [and personal jurisdiction are] proper for all Defendants pursuant to 28 U.S.C. § 1406(a), or (3) sever the claims in the case, retain jurisdiction over the Defendant[s] for whom venue [, and personal jurisdiction, in the court] is proper, and transfer the other claims.'") (quoting *Lea v. Vilsack*, 2023 WL 1141833 at *2 (M.D. Tenn. Jan. 30, 2023), *aff'd sub nom. Lea v. U.S. Dep't of Agric.*, 2024 WL 841436 (6th Cir. Feb. 28, 2024).

In its Motion, Bobcat argues that the Court should dismiss Sherwin-Williams' claims against it under the common law doctrine of *forum non conveniens*. (Doc. No. 3 at PageID#s 135-137.) Alternatively, Bobcat argues that the Court should transfer the entire action to the United States District Court for the Northern District of Texas pursuant to 28 U.S.C. § 1406(a) and 28 U.S.C. § 1631. (*Id*. at PageID#s 138-139.) Regarding the latter request, Bobcat asserts that "venue would be proper as to all defendants in the judicial district where the Project is located, because that is where the events giving rise to Sherwin-Williams' claim occurred as well as where the property that is the subject of the lawsuit is." (*Id*.) Bobcat further maintains (summarily) that the interests of justice would support transfer because, even though Sherwin-Williams' contract with Power contains an Ohio forum selection clause, "venue would be proper in the Northern District of Texas for all parties" and "it is in the interest of all parties and the court to litigate the claims all together." (*Id*.)

In response, Sherwin-Williams argues (generally and without citation to any authority) that "even if Texas was a 'more convenient' forum, the [Texas] Court would not have jurisdiction to hear the entire case because of the forum selection clause in the Power Contract." (Doc. No. 11 at PageID# 183.) Sherwin-Williams further asserts that "[i]f the Court transfers this case to Texas, Power will likely request to move the claims against it back to Ohio based on the forum selection clause," which

"could lead to two separate lawsuits being litigated in different courts in different states regarding the same Project." (*Id.*) Sherwin-Williams maintains that "[s]eparate claims would lead to separate and duplicative discovery, a potential for inconsistent rulings, and a virtual guarantee that both Bobcat and Power will point to an empty chair at trial." (*Id.* at PageID# 184) Sherwin-Williams argues that it "should not be punished and forced to litigate in multiple jurisdictions related to the same conduct." (*Id.*) Thus, Sherwin-Williams argues that (1) the Northern District of Ohio is the best and most appropriate forum to hear Sherwin-Williams' claims; but (2) "should this Court be inclined to transfer venue to the Northern District of Texas, it should Order that all claims against both Defendants be transferred." (*Id.*)

In its Reply, Bobcat agrees with Sherwin-Williams that "it makes sense to litigate all the claims together." (Doc. No. 13 at PageID# 256.) Thus, Bobcat asserts that "if the Court transfers the claims against Bobcat to the Northern District of Texas, then it should transfer the claims against Power too." (*Id.*) Without citation to authority or any meaningful discussion of the impact of the Ohio forum selection clause in the Power ESA on a potential transfer, Bobcat asserts (summarily) that "[p]ersonal jurisdiction and venue would be proper there for Power because that was where the Project was located." (*Id.* at PageID# 256-257.)

Notably, although it could have sought leave to do so, Power did not file any response to the parties' briefing regarding the appropriate venue in this action.

The Court will first provide a brief overview of the legal standards regarding venue. Three federal statutes provide the Court with authority to dismiss a case for improper venue and/or transfer a case to another district: (1) 28 U.S.C. § 1404(a); (2) 28 U.S.C. § 1406(a); and (3) 28 U.S.C. § 1631.

*See Jackson v. L&F Martin Landscape*, 421 Fed. Appx. 482, 483 (6th Cir. 2009); *Aqeel*, 2026 WL 124240 at * 4.

Section § 1404(a) provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a). "The purpose of this provision is to transfer actions brought in a permissible yet inconvenient forum." *Jackson*, 421 Fed. Appx. at 482 (citing *Martin v. Stokes*, 623 F.2d 469, 471 (6th Cir.1980)). "[A] transfer under section 1404(a) may not be granted when the district court does not have personal jurisdiction over the defendants." *Pittock v. Otis Elevator Co*., 8 F.3d 325, 329 (6th Cir. 1993). *See also Jackson*, 421 Fed. Appx. at 482. "If an action is transferred under § 1404(a), the state law of the transferor court should be applied." *Martin*, 623 F.2d at 473.

Section 1406(a) provides that "[t]he district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." 28 U.S.C. § 1406(a). This provision "allows a district court to grant a change of venue when venue was improper in the original forum." *Pittock*, 8 F.3d at 329. *See also Momentum Fleet Management Group, Inc. v. Midsouth CNGV, Inc*., 2025 WL 2466253 at * 7 (N.D. Ohio Aug. 27, 2025) ("A 'district is 'wrong' within the meaning of § 1406 when there is 'either improper venue or lack of personal jurisdiction.'") (quoting *Jones v. Grants Auto*., 2022 WL 874284 at *1 (N.D. Ohio Mar. 24, 2022)). Unlike Section 1404(a), Section 1406(a) "does not require that the district court have personal jurisdiction over the defendants before transferring the case." *Pittock,* 8 F.3d at 329. *See also Jackson*, 421 Fed. Appx. at 483. When

a case is transferred pursuant to § 1406(a), the law of the transferee forum applies. *See Flynn v. Greg Anthony Construction Co.,* 95 Fed. Appx. 726, 739 (6th Cir. 2003).

Lastly, Section 1631 provides that when the court "finds that there is a want of jurisdiction," it "shall, if it is in the interest of justice, transfer such action ... to any other such court in which the action ... could have been brought...." 28 U.S.C. § 1631. "A court may decide to dismiss an action rather than transferring it under § 1631 either because (1) no permissible federal court would have jurisdiction over the action, or because (2) transfer would not be in the interest of justice." *Roman v. Ashcroft*, 340 F.3d 314, 328 (6th Cir. 2003) (quotation marks omitted). *See also Jackson*, 421 Fed. Appx. at 483; *Sherman v. Biglari*, 2020 WL 6273935 at * 4 (N.D. Ohio Oct. 26, 2020).

"Regardless of which specific provision applies ... the ultimate inquiry under all three statutes is the same: (1) whether the action 'might have been brought' or 'could have been brought' in the proposed transferee district at the time it was first filed, and (2) whether transfer is in the 'interest of justice.'" *In re RealPage, Inc. v. Rental Software Antitrust Litig*., 2024 WL 993302 at *5 (M.D. Tenn. Mar. 7, 2024). *See also Flynn*, 95 Fed. Appx at 738 ("Although each [venue transfer statute] is worded differently and each covers distinct situations, they all state the position that cases should be transferred only when it is in the interests of justice."); *Aqeel,* 2026 WL 124240 at * 4.

Regarding the first issue (i.e., whether the action might have or could have been brought in the proposed transferee district), this inquiry consists of three questions: (1) whether the proposed transferee court could exercise original jurisdiction over the case; (2) whether that court would have personal jurisdiction over the defendants; and (3) whether venue would be proper in that court. *See Zimmer Enters, Inc.. v. Atlandia Imps., Inc*., 478 F.Supp.2d 983, 990 (S.D. Ohio 2007) (citations omitted); *Bbc Ice Cream, LLC v. Spreadshirt, Inc*., 2026 WL 878806 at * 10 (N.D. Ohio March 31,

2026). Regarding the second issue (i.e., whether transfer is in the "interests of justice"), the district court must weigh case-specific factors, private factors, and public-interest factors.[5] *Moses v. Bus. Card Exp., Inc*., 929 F.2d 1131, 1137 (6th Cir. 1991). After weighing the relevant factors, the court must then "decide whether, on balance, a transfer would serve 'the convenience of parties and witnesses' and otherwise promote 'the interest of justice.'" *Atl. Marine Constr. Co., Inc. v. U.S. Dist. Ct. for the Western District of Texas*, 571 U.S. 49, 62-63 (2013) (quoting 28 U.S.C. § 1404(a)).

Relatedly, the common law doctrine of *forum non conveniens* "allows a district court not to exercise its jurisdiction." *Jones v. IPX International Equatorial Guinea, S.A*., 920 F.3d 1085, 1090 (6th Cir. 2019). *See also Hefferan v. Ethicon Endo-Surgery Inc*., 828 F.3d 488, 492 (6th Cir. 2016) (quotation omitted). As the Sixth Circuit has explained, "[i]n the federal system, *forum non conveniens* has been largely replaced by a statutory scheme that allows district courts to dismiss or transfer cases when better forums are available." *Jones*, 920 F.3d at 1090 (citing 28 U.S.C. §§ 1404(a) and 1406(a)). "*Forum non conveniens* operates similarly to that statutory scheme, nonetheless it is

---

[5] Under Section 1404(a), case-specific and private factors include, but are not limited to: (1) the convenience of the parties; (2) the convenience of the witnesses; (3) the relative ease of access to sources of proof; (4) the availability of process to compel attendance of unwilling witnesses; (5) the cost of obtaining willing witnesses; (6) the practical problems associated with trying the case most expeditiously and inexpensively; and (7) the interest of justice. *See, e.g., Means v. United States Conference of Catholic Bishops*, 836 F.3d 643, 651-52 (6th Cir. 2016); *Bbc Ice Cream, LLC*, 2026 WL 878806 at *10; *Woods v. Brooks*, 2020 WL 2182983 at *3 (S.D. Ohio May 6, 2020). "'Courts may also consider public-interest factors such as (1) court congestion, (2) local interest in deciding the controversy at home, and (3) in diversity cases, the interest of conducting the trial in the forum of the governing law.'" *Woods*, 2020 WL 2182983 at *3 (quoting *Flatt v. Aspen Dental Management, Inc*., 2019 WL 6044159 at *2 (S.D. Ohio Nov. 15, 2019)).

Under § 1406(a), transfer of a case to another venue may be in the interest of justice when such transfer "serves the ultimate goal of allowing cases to be decided on their substantive merits, as opposed to being decided on procedural grounds." *In re RealPage, Inc*., 2024 WL 993302 at *5 (quoting *Flynn*, 95 Fed. Appx at 739). Additionally, "it is relevant to the 'interest of justice' inquiry whether defendants would be prejudiced by the transfer." *Aqeel,* 2026 WL 124240 at * 8. "[C]ourts have found that defendants 'would not be prejudiced by transfer to districts where they reside, where they conducted their business, or where the acts giving rise to the liability occurred.'" *Id*. (quoting *In re RealPage, Inc*., 2024 WL 993302 at *5). A court should also consider whether transfer will help avoid "piecemeal litigation" and otherwise "advance[e] the parties' interests in completely resolving their dispute." *Stehle v. Venture Logistics, LLC*, 2020 WL 127707 at *9 (S.D. Ohio Jan. 10, 2020).

distinct." *Id*. "It generally applies when the alternative forum is in a foreign country, rather than in a different district within the federal system." *Id*. (citing *Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp*., 549 U.S. 422, 430 (2007)). It may also apply "perhaps in rare instances where a state or territorial court serves litigational convenience best." *Sinochem Int'l Co*., 549 U.S. at 1190.

*Forum non conveniens* dismissal involves a three-step analysis. *See Hefferan*, 828 F.3d at 492. "After the court determines the degree of deference owed the plaintiff's forum choice, the defendant carries the burden of establishing an adequate alternative forum and showing that the plaintiff's chosen forum is unnecessarily burdensome based on public and private interests." *Id*. *See also Zions First Nat'l Bank v. Moto Diesel Mexicana, S.A. de C.V*., 629 F.3d 520, 523–24 (6th Cir. 2010). "A defendant invoking *forum non conveniens* ordinarily bears a heavy burden in opposing the plaintiff's chosen forum." *Sinochem Int'l Co*., 549 U.S. at 1191.

"The decision of whether to dismiss or transfer is within the district court's sound discretion." *First of Michigan Corp. v. Bramlet*, 141 F.3d 260, 262 (6th Cir.1998). *See also Flynn*, 95 Fed. Appx. at 738.

As noted above, here, Bobcat asks this Court to either (1) dismiss the claims against under the common law doctrine of *forum non conveniens* so that Sherwin-Williams can refile its claim against Bobcat in Texas state court; or (2) transfer the entire action (including Sherwin-Williams' claims against Power) to the United States District Court for the Northern District of Texas pursuant to 28 U.S.C. § 1406(a) or 28 U.S.C. § 1631. (Doc. No. 3 at PageID#s 135-139.) Sherwin-Williams argues that all claims should be litigated together, preferably in this Court but, if not, then in the Northern District of Texas. (Doc. No. 11 at PageID#s 183-185.)

The Court finds as follows. The Court agrees that it would be more efficient and a better use of both the parties' and Court's resources to have Sherwin-Williams' claims against Bobcat and Power litigated in the same forum. As both Sherwin-Williams and Bobcat note, discovery regarding Sherwin-Williams' claims against Bobcat and Power will likely overlap. It would undoubtedly be both costly and inconvenient for discovery purposes for the parties to simultaneously litigate this matter in both Ohio and Texas. Moreover, if this matter were to proceed against Bobcat in Texas and against Power in Ohio, the parties could face the risk of inconsistent rulings. The Court can conceive of little benefit in protracted parallel litigation in Ohio and Texas, particularly given that all of Sherwin-Williams' claims arise out of Bobcat's and Power's actions relating to the Garland Facility Project.

In light of the above, dismissal of Sherwin-Williams' claims against Bobcat on *forum non conveniens* grounds would not appear to be the best option. It appears to be undisputed that, if this Court were to dismiss the claims against Bobcat on this basis, Sherwin-Williams would then be forced to refile its claims against Bobcat in Texas. Meanwhile, and due in large part to the forum selection clause in the Power ESA, the claims against Power would continue on in this Court, leading to the very discovery inefficiencies and risks of inconsistent rulings that both parties claim to want to avoid. The same problems would likely result were this Court to sever Sherwin-Williams' claims against Bobcat and transfer them to the Northern District of Texas.

That leaves Bobcat's alternative request that this Court transfer the entire action (including Sherwin-Williams' claims against Power) to the Northern District of Texas. The Court has concerns, however, about the propriety of transferring the entire action to the Northern District of Texas in light of the forum selection in the Power ESA. As noted *supra,* the Power ESA expressly provides that

"[t]he parties agree that any disputes arising under this Agreement shall be litigated in the State of Ohio, and for that purpose both parties agree to submit to the venue and jurisdiction requirements of the state or federal courts having jurisdiction over the county of Cuyahoga in the State of Ohio." (Doc. No. 1-1 at PageID# 33.) Neither Sherwin-Williams nor Bobcat sufficiently address the effect of this forum selection clause in their briefing. Bobcat brushes the significance of this clause aside, asserting summarily and without citation to authority that "even though Power's contract contains a forum selection clause, venue would be proper in the Northern District of Texas for all parties." (Doc. No. 3 at PageID# 139.) Sherwin-Williams' briefing is both insufficient and internally inconsistent on this issue. On the one hand, Sherwin-Williams implores this Court to ensure that all claims are litigated together, including by transferring the entire action to the Northern District of Texas in the event that the Court determines it lacks personal jurisdiction over Bobcat. (Doc. No. 11 at PageID#s 183-184.) In the same breath, however, Sherwin-Williams asserts that "if the Court transfers this case to Texas, Power will likely request to move the claims against it back to Ohio based on the forum selection clause." *(Id.* at PageID# 183.) Sherwin-Williams cites no authority in its briefing on the issue of venue.

Moreover, and perhaps most notably, the Court does not have any input or response from Power. As noted above, although it could have sought leave to do so, Power has not filed any response to Bobcat's Motion. Under the circumstances presented, the Court is not inclined to decide the issue of whether to dismiss or transfer the instant action without obtaining input from Power.

Accordingly, the Court finds as follows. The Court GRANTS Bobcat's Motion (Doc. No. 3) to the extent it seeks a finding that this Court lacks personal jurisdiction over it under the Due Process Clause. The Court holds in abeyance a decision on whether to dismiss the claims against Bobcat,

sever and transfer the claims against Bobcat to the Northern District of Texas or transfer the entire case to the Northern District of Texas, as follows.

**Given this Court's ruling that it lacks personal jurisdiction over Bobcat, the Court hereby ORDERS Sherwin-Williams and Power to meet and confer to discuss whether they can reach an agreement to mutually waive the forum selection provision in the Power ESA and agree to a transfer to the Northern District of Texas. In the context of this meet and confer, the Court encourages counsel for both parties to carefully consider and review the three venue statutes discussed above, including (but not limited to) the issue of how a transfer under any of the above statutes might affect the governing law upon transfer. By no later than August 14, 2026, Sherwin-Williams and Power shall file a Joint Status Report on the docket advising the Court whether or not they have reached an agreement to transfer the case. If an agreement to transfer the case has been reached, Sherwin-Williams and Power shall identify in the Joint Status Report which venue statute they believe is the appropriate vehicle for a transfer of Sherwin-Williams' claims against Power. If Bobcat has an objection or wishes to respond to any agreement reached between Sherwin-Williams and Power, it must file a Response on the docket by no later than August 21, 2026.**

**In the event that Sherwin-Williams and Power are <u>not</u> able to reach an agreement to waive the forum selection clause and transfer the case, the Court hereby ORDERS Sherwin-Williams, Bobcat, and Power to file supplemental briefs that more fully address the issue of whether this Court should dismiss the claims against Bobcat or transfer all or part of the instant action to the Northern District of Texas in light of the forum selection clause in the Power ESA. The parties' supplemental briefs shall be filed by no later than August 28, 2026; shall be no**

**longer than ten (10) pages in length; and shall contain citation to relevant authority, including authority specifically relating to the effect of the Power ESA forum selection clause on the venue issue before this Court.**

## V. Conclusion

Accordingly, for all the reasons set forth above, Defendant Bobcat Heavy Civil, LLC's Motion for Judgment on the Pleadings and Alternative Motion to Transfer Venue (Doc. No. 3) is GRANTED IN PART as follows. Defendant Bobcat Heavy Civil LLC's Motion is GRANTED to the extent it seeks a finding that this Court lacks personal jurisdiction over it under the Due Process Clause. The Court holds in abeyance a decision on whether to dismiss the claims against Bobcat, sever and transfer the claims against Bobcat to the Northern District of Texas or transfer the entire case to the Northern District of Texas, as set forth in this Order.

**IT IS SO ORDERED.**

*s/Pamela A. Barker*
PAMELA A. BARKER
U. S. DISTRICT JUDGE

Date: July 31, 2026